Before we start, we'll also just get a scorecard on the players here. Are you Mr. Craigy? I'm Mr. Parkey. Oh, you're Mr. Parkey. Okay. And you are going to argue what? I am, for Grocery Outlet. I'm sorry? For Grocery Outlet. Right. But is Mr. Craigy going to also argue? It says there's two counsel listed here somewhere. Correct. Mr. Craigy is here. So you're here, but you're not going to argue. We decided yesterday. That was good thinking. And astute observations. Thank you. And then I have only one counsel listed for argument for Albertson's. Is that correct? All right. So you may proceed. May it please the Court. I am Lou Parkey for Grocery Outlet, and I'd like to reserve five minutes for rebuttal, if I may, please. Try to watch the clock. I'll try to help you. Rights and a trademark in the United States are based on use of the mark. That is the most fundamental principle of U.S. trademark law. It always has been. The public policy of the United States is to favor the use of marks. The public policy disfavors the warehousing or hoarding of marks, because that is anti-competitive. It deprives competitors of the use of the marks, and more importantly, it deprives the marketplace of the marks. Now, since the advent of the Lanham Act in the late 40s, abandonment has been a defined term in our statute. Unlike some of the other statutes that have been discussed here this morning, this one is clear. It says, one prong of it says that if you discontinue use of a mark with an intent not to resume, that equals abandonment. And use is also defined. The Congress, in the only major overhaul of the Lanham Act, which was the 1988 Trademark Law Revision Act, tightened up the definition of use. It added that the use has to be a bona fide use in the ordinary course of trade. This language, ordinary course of trade, is flexible, and Congress intended for it to be flexible, because what's the ordinary course of trade for one business is not the ordinary course of trade for another. Now, let's step back and look at what happened on November 3, 1999. On that day, Albertsons changed the name of all of the Lucky Supermarkets to Albertsons. It had a massive advertising campaign to educate its customers that the new name was Albertsons. Are you claiming that at that time of the announcement that it constituted an overt and permanent abandonment of the mark in 1999? Yes, Your Honor, we are. On November 3, 1999, we're saying that on that date, they discontinued use of the Lucky Mark, and they had no intention as of that date to resume that use. Well, the announcement triggers a presumption, is that correct? I don't think the announcement ---- Regarding Albertsons' intent to resume the use of that name. The statute says that intent not to resume may be inferred from the circumstances, and the announcement coupled with these other things, like the removal from the back offices of the name Lucky and the throwing the signs in the trash, those things altogether are the circumstances under which intent not to resume should be inferred. All right. Albertsons did not announce that it was abandoning the Lucky Mark. That would have been an irrational thing for them to do, because that would have just invited competitors to come in and compete with them under that mark. I'm sure they hoped that no one would, and they're not to be faulted for that. But short of making a public announcement, and the district court found that there was no public announcement of abandonment, and we don't dispute that, they didn't say we're abandoning the mark, but short of that, what more could they have done to indicate their intent not to resume use of the mark? Well, as I read the district opinion, that doesn't seem to be the burden of your problem. The district court did not make findings of fact. It heard no witnesses, correct? It was just on the pleadings? Well, we had deposition testimony. Pardon? Deposition testimony. Deposition testimony. Affidavits. So the district court didn't make any determinations of truth finding, just took and decided what he thinks it might come out like. But in doing so, he sort of tipped it that there may be some problems with abandonment, but the main issue he had with your case was that there wasn't a proof, clearly proven intent to abandon. And it looks like to me that you did pretty well in the district court until you got down to the question of the intent, and that was where he thought that he needed to give a preliminary injunction, that you were going to have trouble at the trial, final trial, in proving that. So it seems to me what I need to find out from you is why was the district court wrong in its preliminary assessment? You're liable to prove to him differently at the trial, but in the preliminary assessment, why was the district judge clearly abused his discretion in making this determination, having in mind that he set the standard as it must be clearly proven? The district court erred in two ways. Number one, where the circumstances are such that the intent not to resume can be inferred on November 3, 1999, it was error to look beyond that, as the district court did, for an intent that happened later. The district court said Albertson's formed an intent as early as 2001 to resume use. Yes. Our position is that's not relevant. What happened on November 3, 1999, under the clear language of the statute, constituted an abandonment. Well, you've got three years of non-use that allows you to get home free, regardless of intent. Within that three-year period, there was some evidence that the district judge thought might be useful at the time of the final trial of this case that indicates that they did have an intent to reuse the case. So how can you just cut it off in 1999 and say nothing else matters? The three years is just a prima facie burden, and it's there because it's very difficult in many circumstances to prove abandonment. So it shifts the burden to the party, to the mark holder. It is not, it does not mean that if you discontinue use with an intent not to resume as of that moment, that you haven't abandoned the mark. So you're saying that you don't get, you don't really need to invoke the presumption here if you examine the landscape in 1999. Exactly. Exactly. As of November 3, 1999, there was an immediate abandonment of the mark. Well, let me ask another question, which is a more legal question, but does affect how the district court processed this. That has to do with the standard of review or the standard of proof for abandonment. As I understand it, the district court said clear and convincing. Is that correct? That's correct, Your Honor. And we have a situation where the word strictly pops up in a lot of cases, but nobody has said exactly what that means. Exactly. Is there any support in our precedent for the standard of clear and convincing? There's a lot of district court support for that. Professor McCarthy says it needs to be clear and convincing. He's the leading authority in trademark law. A lot of the district courts have followed that. However, we were unable to find any appellate court that had followed it, and the only appellate court that really carefully considered it is the Federal Circuit, and they found it to be preponderance of the evidence. And that's been followed by the Fourth and the Seventh Circuits in passing. They haven't apparently really considered it. Albertson says that, well, that Federal Circuit case relates to the cancellation of a registration. In this case, Grocery Outlet has filed a declaratory judgment action of non-infringement against Albertson's and also asked the court to cancel the registrations. Let me ask you if there is something. We have never said in the Ninth Circuit that it's clear and convincing, and no circuit court has said it's clear and convincing. Is there support for the fact that it might be something between preponderance and clear and convincing? Not that I know of, Your Honor. I think the Federal Circuit said, looking at the legislative history, looking at the clear language of the statute, it doesn't say anything about anything other than preponderance. It doesn't say anything. The preponderance of the evidence or clear and convincing. And if we were to determine that it's something less than clear and convincing, either preponderance or preponderance plus, would this case need to go back to the district court? The district court made it very clear that the decision was based in large part on the fact that we had a clear and convincing burden. That's in the transcript of the preliminary injunction hearing. So I think the answer to that, Your Honor, is yes. Is there any reason that this wasn't held as a trial under Rule 65 and to join the preliminary injunction with the trial on the merits? I think probably both parties had requested a jury in the case. And I think that was ñ it is to be a jury trial. Okay. Let me go back to the standard. I noticed in the district court opinion, it says it must be strictly proven. He starts with strictly proven, which is a statement that was picked up in our excellent opinion of electrosource. And at footnote 2, it talks about, of that case, strictly proven, strictly proved, high burden and prudent use of circuits. We note from the Third Circuit, et cetera. You argue, on the other hand, that we should adopt other circuits who have used simple burden of persuasion. There's nothing in our circuit that I have found that allows us to do that. As a matter of fact, it's all to the contrary. Strictly proved is not mere burden of persuasion. So why isn't the district court right when it says ñ when it talks about stringent, heavy, strict burden of proof, strictly proved? Why aren't those all synonymous with what we've been talking about of strictly proved? We would submit, Your Honor, that this is an open issue in the Ninth Circuit. The Federal Circuit, when it looked at some of the ñ I hate to call it loose language of the courts, but on this strictly proved thing, decided that that really must relate to just the evidentiary burden the party has, trying to establish just the difficulty with the proofs, not the standard of proof. What does strictly mean, then? I think this is the one that the Fourth Circuit called a talismanic phrase. And frankly, I don't think it has a definition. I think the correct test should be preponderance of the evidence. I understand that's your position. Yes. I'm trying to relate that position to what our cases seem to require. The difficulty is that these words get in there, and then they just keep going. And nobody ever stops and says, what does it mean? I think that's kind of ñ And I didn't have to consider it either in Lent for a source, so I didn't. But ñ You would admit that strictly proved is closer to something stronger than burden of persuasion, just tipping the scales. Well, it certainly sounds different than preponderance of the evidence. I grant you that. I just don't think that should be ñ I think that is loose language that the courts have thrown around and really haven't taken the time to define it. And we have a second layer here because we're at preliminary injunction where the district court does not state facts, is not required to have a statement of facts, makes what he thinks it might come out, and then we treat that with abuse of discretion. So we have two layers that we're talking about here, which we won't have when you have your final adjudication, which I assume you're marching towards in the district court now. Well, the district court action is on hold pending this appeal because ñ Oh, is that right? We need guidance from this court on two issues, really, on what the standard of review ñ the standard of proof is. Is it preponderance of the evidence or is it something else? And we also need guidance from this court on whether it's appropriate to look beyond the November 3, 1999 date. See, that turns the whole situation on its head because we've told counsel, we've told lawyers that we don't want to do that, that this is just a way station. We're not going to give you advice with an intermediate appeal on some issues to make the case tried better. All we're going to say is, is it fair to have an injunction pending appeal? Is it fair to do that? That's all we want to decide. And we've made that so clear in our cases that I still am puzzled when a court wants to send it up or counsel want to bring it up because we've made it clear that these determinations simply are not adjudications on the merits, they're not adjudications on the law. We're going to wait until we have the full record before us. So it's just puzzling to me that, in this case, the district court, if the district court's idea to do it or whether counsel would want some free advice preliminarily before we get the full record in front of us. It seems to me it's counterintuitive. Well, I can't blame the district court for that. We did ask that the district court action be stayed pending this appeal, and that motion was granted. But, of course, although Judge Wallace is right on a preliminary injunction, we're doing an abuse of discretion review. But don't the cases say that if the district court invoked the wrong standard or applied the wrong law, that that in itself is an abuse of discretion? That's correct, Your Honor. And we submit that's what happened here. It's really a pure question of law. Do you want to reserve the remaining time? Reserve the remaining time. Thank you. Good morning. May it please the Court. I'm Rob Weikert, appearing on behalf of the Appellees and Cross Appellants, the Albertsons Parties. Your Honors touched on several points in connection with Mr. Perkey's presentation, and I think the key one is or one of the key issues, obviously, on the appeal is the standard of proof. And abandonment is a form of involuntary forfeiture. I think that's where Strictly comes from. It's a disfavored defense under the trademark law. Any form of forfeiture is disfavored under the law. And that's essentially what abandonment is, is a form of involuntary forfeiture. In this case, we have Grocery Outlet that is essentially trying to usurp a mark that it has no rights to, that it never had any rights to, and it doesn't have any rights to now. Albertsons is the trademark owner. It has been the trademark owner for 65-plus years. The mark was not abandoned in November 1999. In fact, under this Court's excellent electoral source opinion, use of the mark continued well beyond November 1999. But you did have a big public campaign to eliminate the lucky mark from the stores and to marry it, as you put it, into the Albertsons family. Why can't Grocery Outlet presume, as well as any other member of the public, that you really did abandon the mark? Well, Judge Nelson, there wasn't an abandonment at that point. I mean, just because there was advertising relating to the changing of the existing stores. And that's all it was. Albertsons simply decided to change the Lucky stores that existed as of 1999 to Lucky. That's it. They never made an express abandonment. They never said they were no longer going to use the mark. They never said that the mark was being eliminated, as in the Highland Potato Chip case. They never said that the mark was being abandoned, as in this Court's California Cedar Products case. All they did was simply change those existing Lucky stores to Albertsons. And as the evidence showed, and this was a very, very well-developed, uniquely developed record, preliminary injunction record, because there was three months of expedited discovery where numerous depositions were taken, documents were exchanged, interrogatories were exchanged, and there was a lot of evidence before the district court on the preliminary injunction. There were two TRO hearings that preceded that preliminary injunction hearing, and then there was the preliminary injunction hearing. So Judge White had a lot of evidence before him when he made this decision. I mean, there were, in addition to the affidavits, a lot of documentary exhibits that were submitted. And that evidence clearly showed, and Judge White found as a factual matter that's not clearly erroneous, that Albertsons did not discontinue use of the Lucky mark in November 1999 with the intent not to resume use. That's the word. You say he made a finding of fact? Yes. Well, he made a legal conclusion. He didn't make a finding of fact. Well, he says, Your Honor, that... He says at the very beginning, under finding of fact, the following factual findings are not meant to be binding but rather represent those facts this Court finds probable that the parties can prove at trial. He specifically said he's not making a finding of fact, which is proper under a preliminary injunction. Correct, Your Honor, except that what he did was he obviously weighed the evidence that he had before him. He didn't. Well... He weighed how it will probably come out. But that's different from weighing credibility from a live witness, and it's different from making findings of fact. I think the cases got really confused by considering him making factual findings when he doesn't have to. Well, on Sierra Line, it indicates that, if he properly followed on Sierra Line, that you just do probabilities at the station. It's a preliminary weigh station. Sure. Well, I think even making those probabilities, Your Honor, he concluded... I'm just concerned about your putting the clearly erroneous test on. I don't think that's the test at all. Well, I think it's abusive discretion. Well, it is abusive discretion, although I think underneath that, subsumed within that, is the way to show abusive discretion is either he made clearly erroneous findings of fact or he misapplied the law. Making findings of fact, you can't get to that point. And he specifically rejects the idea that he's making findings of fact. I don't know. It just strikes me that that has very little to do with whether or not we affirm or not affirm the district court. But I think we have to have it in context that the district court now is talking probabilities and not findings. I understand, Judge Wallace. Okay. I think the issue, though, is he didn't abuse his discretion. In terms of the evidence that was submitted, he was at least able to render a probability that Albertsons did not discontinue use of the mark in November 1999 with the intent not to resume use. Well, part of where I have to agree that he made that in the general context, the reason that, you know, most preliminary injunctions are affirmed, is because within the framework of our preliminary injunction standards, it's not an abuse for the judge to come out the way he did. This case has a wrinkle because there's a legal issue in there, and that's the standard of abuse. So I'd like to talk about that with you. In talking that abandonment is like forfeiture, that also is repeated all the time. But forfeiture is really a common law concept, and abandonment is a statutory concept. And the Supreme Court has told us that unless the Congress writes in a different standard of proof, that generally the standard of proof is preponderance. So I'm interested to hear your view on why you think it's clear and convincing, which is the standard he used, why that's correct, and if so, what's the basis for including that into the statute? Well, I think, rightly or wrongly, Judge McKeown, it comes from the forfeiture nature. Whether it's statutory or common law, it is a form of involuntary forfeiture. Grocery Outlet is trying to wrest this mark away from Albertsons, who's the mark owner, the registered mark owner. And they're doing it involuntarily because Albertsons never abandoned the mark. And if you look at Professor McCarthy, who surveyed the courts, who had employed the clear and convincing standard, at least interpreted strictly proved to mean clear and convincing. Well, Professor McCarthy, for whom I have great respect, he didn't cite any of the circuit courts. Well, I don't know. I mean, it's one of these glaring things where he just didn't. So, I mean, I think we have to kind of put Professor McCarthy back in the box and then talk about the case. Well, the only reason I raise that is he does discuss you're right, he doesn't except for mentioning the subversaria case out of the Federal Circuit, and he tries to distinguish it on the grounds for which it should be distinguished, which is that, yes, it came out of the Federal Circuit, but it wasn't dealing with the stripping of someone's property rights. It was simply dealing with the registration issue, whether or not a registration ought to be canceled. But even if a registration's canceled, that doesn't eliminate common law rights, and that's what abandonment does, is abandonment under the statute eliminates common law rights. I mean, it's basically your property is gone. So the subversaria case was simply looking at an administrative decision from the United States Patent and Trademark Office on a cancellation proceeding. It wasn't looking at a stripping of property rights, and that's a very important distinction that's laid out in the dial-a-mattress case. And if you look carefully, the Seventh Circuit's Rolo decision preceded subversaria. So it didn't follow the Federal Circuit, it preceded it. And there's no analysis whatsoever. The Rolo court simply says that we're going to adopt a preponderance of the evidence standard, period. And so does the Fourth Circuit in the Emergency I case. Again, no analysis whatsoever. And so the — but the district courts, including some in this circuit, cash processing services, e-machines, which is an unpublished decision, but still, both of those courts, based on this circuit's and this court's decision in Prudential, and in other cases saying that it's a strictly proved standard, decided that it was clearly something more than a preponderance of the evidence, and concluded, I think, based on other courts that had come to the same conclusion, that it was a clear and convincing. Now, whether it's something in between, I don't know. But I think clearly, and I would submit that, respectfully, that it is something more than a preponderance of the evidence. Okay. Let's take — let's assume you're correct. It's more than a preponderance. But what if we were to say, but it's not clear and convincing? And there are, as you know, in various issues where we have these sort of sliding scale standards or burdens of proof. If we were to say it's something between clear and convincing and preponderance, wouldn't we need to reverse? Because the district court based his — based his decision on an incorrect legal standard. Well, I mean, he didn't because there's no law to that effect now. I mean, the fact of the matter is — If that were the law. Right. But he followed the law as it existed. And the existence was that it meant strictly proven. That doesn't answer the question. If that is the incorrect standard, would we need to reverse? Well, let me just — can I address what one issue would be? I don't think it's the incorrect standard. I think it should be clear and convincing. But if I would — I'm not sure whether the Court would have to reverse or not. I guess the question would be whether there was enough in the court order that would otherwise allow this Court to affirm it. I don't know the answer to that question as to whether you would have to reverse. I mean, the Court does point out, Judge White, as Judge Wallace indicated, that he found it to be a stringent, heavy or strict burden of proof. Now, if you found that it was a strict burden of proof and that's more than a preponderance, it simply has to be strict, I would think that Judge White would be — the Court could affirm, because Judge White seems to have followed that standard, that it's a strict or heavy burden of proof. I mean, that's what he says in his order. So on those circumstances, I think this Court would not have to reverse. But it's — it's — I would submit that if the Court looks at the district court decisions that have analyzed this, and I know they're not binding on this Court, that would urge the Court to adopt a clear and convincing standard, because that does appear to be, in terms of the relative standards, that would appear to be the one that would make the most sense here. Would you speak to the issue raised by Mr. Perkey, and that is that, in his view, it was wrong to not put abandonment right at the — up front. Your view, obviously, is that there were various either uses or evidences of intent that followed the big marriage announcement, which was quite a hoopla, I guess. What do you think are the appropriate factors to look at in the face of a company that says, basically, we're throwing out Lucky and we're going with the new guys? Because it was a pretty wide-ranging public announcement, or public advertisement, I should put, not announcement. Well, I would say, first of all, I mean, it was simply advertising that they were replacing the existing Lucky stores with Albertsons. I mean, that's all it was. It was far different than the case in California Cedar Products, where they actually expressly abandoned this Court's decision in California Cedar Products, where they expressly abandoned the mark and filed papers to that effect with the Patent and Trademark Office. That didn't happen here. And as Mr. Perkey concedes, there was no express abandonment of the mark. The question was, as he's raised it, is whether the mark was abandoned as of November 1999. And we would submit there's two reasons why that can't be the case. One is, under Electrosource, we continued to sell product under the Lucky mark for years following November 1999. And substantially. Leftover Lucky products. That's correct. It was inventory product. You're right, including inventory packaging and product. But it was sold through the Albertsons stores, Lucky slash Albertsons stores, just as it had been prior to the name change in those stores. It was bona fide commercial use, and grocery outlets never contended otherwise, because they can't. I mean, these products were on store shelves sold to the public. And obviously they were targeting consumers that were already familiar with the Lucky mark. And they sold almost 80 million products in 2000, and it dropped off after that as the inventory was depleted. But that's no different and, in fact, stronger than the facts in the Electrosource case. I mean, Mr. Mallett continued to sell those backpacks with much less documentation and then not in a kind of a spot way rather than a concerted, institutionalized effort. That's the case that all the court said was there's a factual issue. Go back. It's not a summary judgment issue at that point.  That's right. But the language used in that case applies directly here, because, and we argued this to the district court, that if you look at Section 1127, it simply says that the mark needs to be placed on goods that are transported or sold in commerce. That's what the definition of bona fide commercial use is under the statute. And that's exactly what we did. In a way, he decided that issue against you, more or less. He did. And you still came out ahead. Well, we did. Exactly. But we think that's an even stronger basis for affirmance, and we took a protective cross appeal on that issue, because if you find, if you get rid of the November 99 discontinued use date and you go to when we made our last bona fide sale of Lucky Product, which appears to be sometime in 2005, as a matter of law, you cannot have prior to 2005. So there was no discontinued use with the intent not to resume use. Well, he has some doubt about the sell-off of the merchandise as being use, because he indicates that's not use in commerce. That's just selling off stock that you don't want. So it looks like that you may have a burden on that issue when this goes back for trial. As of now, I don't think he thinks you have it made. Well, and that may well be the case, Judge Wallace. But the point is, I think under electrosource, I mean, again, the case, the language in that case is very, it's on all fours with the circumstances of our case. And there's very good language in that case that suggests that to meet that standard of bona fide commercial use, it's simply, you simply follow the statute. As long as you place the mark on goods that were transported and sold in commerce, you've satisfied the elements of the statute. If that were true, then, if you had 20 years' worth of lucky goods in a back warehouse, you're using the mark for 20 years even though you do nothing else. Is that right? As long as it's bona fide commercial use. Is that right? Yes, that's right. And you'd sell off and you'd have the mark used for 20 years. Well, that's correct. As long as it was bona fide, you weren't doing it merely to reserve rights in the  Bona fide means what? You're selling it for cash? No, you're selling, you're making a good faith commercial use of the mark in commerce. You're selling it. You're selling it on your stores just as you would any grocery product. And you're calling it lucky. That's correct. It has the lucky mark on it. Whereas putting up an ad or putting up a billboard to potentially reserve your mark was something that Judge White was not so impressed with, correct? Well, that's correct. I mean, as Judge McKeown, as you noted in the electrosource case, I mean, there's kind of a fine line there. I mean, the courts have to be cognizant of efforts made merely to reserve rights in the mark as opposed to bona fide commercial use of the mark, use of the mark in commerce under Section 1127. That's what the Carter-Wallace case says. That's what electrosource says. And so the courts have to look for that. But there's been no contention in this case that any of the product we sold was feigned or that it was, you know, designed merely to reserve rights in the mark. I mean, we were simply selling inventory. But under electrosource, that's enough to continue use of the mark. And as you go back to the $80 million or whatever in 2000, what else was going on internally with respect to rejuvenating the mark during that period? Well, there actually was a lot going on. I mean, the company almost immediately after in 2000 began looking at they did a goodwill left in the mark, and there were a whole host of studies done thereafter and plans formulated to figure out a way to resume use of the mark on storefronts. Now, keep in mind, we're still selling the product with the lucky name on it. But in addition to that, the company is actively involved in efforts to determine how it's going to use the mark on storefronts. And it really wasn't a question of if, it was more a question of when it was going to happen. And those studies began almost immediately after 1999. And we even did a residual goodwill study in connection with the preliminary injunction, where they found that the residual goodwill in the mark was very high. And that's an important point here, even though it wasn't addressed by Judge White. But it goes to the intent element. And as the Exxon case explains, a company is not going to get rid of a mark or abandon a mark that has that kind of residual goodwill in it. It goes to the intent. And remember, the statute doesn't say that we have to prove that we discontinued use with the intent to resume use. The statute says you have to discontinue use with the intent not to resume use. And Judge White, in looking at the evidence that was submitted, at least found the probability that in 1999, given what occurred thereafter, and relatively shortly thereafter within the three-year period, the presumptive period, that there was evidence and strong evidence that Albertson's intended to resume use of the mark on storefronts. Now, remember, again, we're taking the position we were still using it on products. So, I mean, that's the ‑‑ in terms of that analysis, I know I'm almost out of time here, and in terms of that analysis, I don't think there's any way that you can determine that Albertson's abandoned the mark. I mean, Judge White applied the statute exactly as Grocery Outlet argued. And set forth the standard as well. I'm not sure I have anything else to add to that, unless I can answer a question. Thank you. I would direct the Court's attention to page 38 of the transcript of the proceedings of June 30, in which, Judge, the district court discusses the burden of proof issue. Now, Mr. Weikert says the Cerveceria case was only a case of canceling a registration. In this case, Grocery Outlet has a declaratory judgment of non-infringement. It also has a request that the court cancel the registrations of Lucky, both on the grounds of abandonment. The abandonment statute is exactly the same. Every word is the same. Now, are we to have one burden of proof on proving abandonment to cancel the registration, and another burden of proof to prove abandonment? I mean, that's, I think, on its face, that's ridiculous. The Cerveceria case of the Federal Circuit looked at the abandonment statute and said preponderance of the evidence is the correct. And there's – I don't think there's any reason for this circuit to create a circuit split by deciding anything other than preponderance of the evidence. Let me address this. If we agreed with you on that, what would we do with these words, strictly, that seem to be very prominent in our case law? That's true. I admit that. But a talismanic phrase, maybe. In response to Judge Wallace's question, Mr. Weikert said this 20-year supply would be, so long as it's bona fide use, they're selling off the inventory. Well, what if it's 50 years? What if it's 100 years? It's conceivable with something like aluminum foil that could last forever. If they have a big inventory of that at a smaller store where the customers prefer Reynolds Wrap or something, they could have lucky aluminum foil on the shelves forever. And they make one sale every two years. That couldn't be what Congress intended when they wrote the abandonment statute, and it couldn't be what Congress intended when they tightened up the definition of use in commerce. With respect to electrosaurs, the court there made it clear that every case must be evaluated under its own circumstances, the totality of the circumstances. Ordinary course of trade for Mr. Mallett, selling backpacks out of his garage to surf shops, is I can't imagine a more night and day situation than exists here with Albertsons, a $40 billion company with 2,000 stores able to do its business with all those resources. What's the ordinary course of trade for Albertsons is not the ordinary course of trade for Mr. Mallett. The district court was correct in its finding that the burn off of the inventory under all the circumstances of this case was not bona fide use of the mark in the ordinary course of trade. Thank you. Thank you both counsel for your arguments. Very helpful, interesting and difficult case. We appreciate your arguments and we're adjourned for this morning. The case of Grocery Atlas v. Albertsons is submitted.
judges: Wallace, D.W. Nelson, McKeown